## City of Philadelphia v. Midrealty Company

*Louis F. McCabe*, for sequestrator.
*Michael D. Hayes*, for City of Philadelphia.
*James S. Feight*, for claimant.
*J. Schneyer Clearfield*, for substituted sequestrator.

CARROLL, J., June 12, 1944.—The matter is before the court on exceptions to the adjudication of the first and final account of the sequestrator. This sequestrator, William B. Marker, appointed by the court on August 1, 1938, failed and refused to file a proper account. On July 1, 1943, he was directed by decree of this court to surrender his books to an accountant appointed by the court and on July 14, 1943, he was relieved of all his duties except that of accounting by an additional decree of the court, which appointed a substituted sequestrator. The adjudication to which these exceptions were filed was sur the account of the court-appointed accountant for the removed sequestrator and exposed a deficit of $28,932.93. The particular findings against which the exceptions are directed are those by which the sum of $54,410.60 was awarded to be paid to the Bellevue-Stratford Company. Of this amount $29,-725.81 represented an allowance for an easement fee. The balance of the sum awarded to the Bellevue-Strat-

ford Company was for electric current, water, and steam service to the payment of which there is no objection. The objection to the payment of the easement fee is made by counsel for the substituted sequestrator on the basis that the sequestration of the rents by the municipality is primarily for the purpose of collecting delinquent real estate taxes, which are a first lien against the real estate; hence, should be paid before any payment is made to any other creditor except payment of those charges incident to the normal operation of the property. The adjudication awarding payment of this sum to the Bellevue-Stratford Company had the effect of giving priority to the easement fee over municipal taxes.

On behalf of the Bellevue-Stratford Company it is contended, first, that the substituted sequestrator has no standing to file these exceptions and, secondly, that the payment of the easement fee is an expense necessary to the operation of the property. The reason advanced is that it is a license fee payable by the sequestered property to the Bellevue-Stratford Company for the right to maintain doors and windows opening on property owned by the Bellevue-Stratford Company, and if payment was not made it could compel the openings to be closed.

As to the contention that the substituted sequestrator has no standing to file exceptions, this court considers its adjudication is still within its control and if any error of law or fact is contained within it the court is anxious to have it called to its attention irrespective of the manner in which the question is raised, so that the issue may be decided on its merits.

For this reason, the court will consider the matter as though it were originally raised prior to the adjudication, and will decide the issue without considering how the issue came to be raised, for it is the court's duty to correct an error in its adjudication if such exists.

The question of the correctness of payment of the sum of $29,725.81 to the Bellevue-Stratford Company then becomes the sole issue to be decided.

It is contended that the payment of the easement fee is a necessary operating expense because the Bellevue-Stratford Company could, in event of default, require the opening to be closed, thus rendering the building not tenantable. However, we are not confronted with this question. The charge has not been paid for a number of years and to date no action of any kind has been taken to compel payment except to file a claim against the funds in the hands of the sequestrator. It is not necessary therefore to decide if a sequestrator might be justified in meeting such a demand should the holder threaten to close the openings in the wall. There is no such threat, and we can see no reason why the owner of the dominant tenement would take such action and end the right to future accumulation of this license fee. At the present time, while it is accumulating, it is still unpaid, though eventually it may be paid. Such an accumulating claim appears preferable to a termination of the easement.

The only question to be decided on these exceptions is the priority of lien and payment as between this license fee and municipal taxes. The license fee is an obligation or charge upon the sequestered property. In this respect it is very much of the same character as any other obligation or charge which might be an encumbrance on the property, such as the accumulation of interest on a mortgage. The Municipal Lien Act of May 16, 1923, P. L. 207, in creating the remedy of sequestration, clearly provides (sec. 3) that municipal taxes shall be a first lien against the real estate. This gives priority to taxes over all debts "before any other obligation, judgment, claim, lien, or estate with which the said property may become charged, or for which it may become liable . . ."

This phrase appears to the court more applicable to the easement fee upon which the claim is made than the phrase "all commissions, costs, and necessary expenses", which is the manner in which the act classifies those items which are payable before taxes. The license fee was created by a contract between a former owner of the sequestered property and the owner of the property adjoining. It is not a contract made by the sequestrator as an exercise of the powers which the act enumerates prior to the provision for payment of the "commissions, costs and necessary expenses". The act makes provision for the deduction of those specific charges and then provides for the payment of "the net balance toward the taxes". It appears clear to the court that the only costs which may be deducted before taxes are those which are contracted by the sequestrator in the proper exercise of his enumerated powers. All other charges, especially those not contracted by the sequestrator but resulting from contracts of others, charges upon the property, accumulations on encumbrances, and liens, appear to be specifically deferred to the lien of taxes, which the act declares "to be a first lien" on the property.

The exceptions are, therefore, sustained, and that part of the adjudication awarding $54,410.60 to the Bellevue-Stratford Company is amended so as to exclude the allowance for the delinquent easement fee in the amount of $29,725.61, and the decree of the court entered February 1, 1944, is likewise amended as follows: The direction to the prothonotary to pay all funds received by him for this account to the Bellevue-Stratford Company is revoked and he is directed to pay to the Bellevue-Stratford Company all funds received by him to the amount of $24,684.79 only, and to the City of Philadelphia all sums received by him for this account in excess of $24,684.79. As thus amended the decree is confirmed.